## In re Anonymous No. 3 D.B. 89

Disciplinary Board Docket no. 3 D.B. 89.

FRIEDMAN, *Chairman,* July 18, 1994—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to this honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

The Pennsylvania Supreme Court issued an order dated January 9, 1989, immediately suspending petitioner from the practice of law. The order was entered in accordance with Rule 214(d), Pa.R.D.E. on the basis of petitioner's August 1, 1988 conviction in the United States District Court for the [ ] District of Pennsylvania, for possession with intent to distribute cocaine, in violation of 21 U.S.C. §841(a)(1).

As a result of his conviction, petitioner was sentenced to a 10 year period of incarceration, to be followed by a special parole term of five years and to pay $50

to the Crime Victims Fund maintained by the United States Treasury.

On March 2, 1990, petitioner's sentence was reduced to a six year period of incarceration to be followed by a special parole of five years and to pay $50 to the Crime Victims Fund maintained by the United States Treasury.

On February 1, 1991, petitioner's sentence was reduced to a five year period of incarceration to be followed by a special parole term of five years and to pay a special assessment of $50.

The Office of Disciplinary Counsel filed a petition for discipline based on petitioner's October 1988 conviction, on April 27, 1990.

Petitioner, on June 7, 1990 filed an answer to the petition in which he admitted to the facts of his conviction and raised two new matters concerning the circumstances which led to his misconduct.

On August 21, 1990, petitioner was deposed at the Federal Correctional Institution in [    ]. Petitioner and the Office of Disciplinary Counsel were both represented by counsel.

The matter was referred to Hearing Committee [    ] and a hearing was held on October 16, 1990 which was chaired by [    ], Esq. and included [    ], Esq. and [    ], Esq. On February 20, 1991, the Hearing Committee filed its report recommending that petitioner be suspended from the practice of law for a period of four years or until his release from incarceration.

On November 26, 1990, the Office of Disciplinary Counsel filed a brief in response to the Hearing Committee report urging that petitioner be disbarred or be the recipient of a lengthy suspension.

Petitioner filed a brief on the matter and argued that a short suspension, followed by a probationary period was the appropriate discipline to be imposed.

The matter was adjudicated at the April 10, 1991 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania. The board recommended a five years suspension retroactive to October 18, 1988.

By order of the Supreme Court of Pennsylvania, dated February 19, 1993, petitioner was suspended from the practice of law for five years, retroactive to January 9, 1989.

A petition for reinstatement was filed by petitioner on April 20, 1993. The matter was referred to Hearing Committee [    ] and a hearing was held on the matter on September 14, 1993. The hearing was chaired by [    ], Esq. and included [    ], Esq. and [    ], Esq.

On September 29, 1993, petitioner filed a letter brief to the Hearing Committee and on October 16, 1993, the Office of Disciplinary Counsel filed its response to petitioner's letter brief.

The Hearing Committee filed its report dated December 13, 1993, in which it recommended that petitioner be reinstated.

By letter dated December 16, 1993, the Office of Disciplinary Counsel advised the board that it would file no exceptions to the Hearing Committee report. By letter dated December 17, 1993, petitioner advised that he would not file any exceptions to the Hearing Committee report.

The matter was adjudicated at the February 3, 1994 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner was born on January 17, 1956 and received a BA degree from [    ] University in 1980 and a JD degree from [    ] University School of Law in 1983. Petitioner was admitted to the bar of the Commonwealth of Pennsylvania on October 21, 1983.

(2) Petitioner's father committed suicide when petitioner was 17 or 18 years of age.

(3) Petitioner's brother-in-law committed suicide during petitioner's first semester of law school.

(4) Petitioner's cousin, who inspired petitioner to attend college, committed suicide during petitioner's second semester of his first year at law school.

(5) While in law school, petitioner used drugs and alcohol and this abuse continued after he was admitted to the practice of law.

(6) On January 6, 1986, petitioner delivered 3.1 grams of cocaine which resulted in his arrest in April of 1988.

(7) Petitioner continued to use drugs and alcohol after his arrest in April of 1988.

(8) On April 7, 1988, a 113 count indictment was filed in the United States District Court for the [    ] District of Pennsylvania at Criminal no. [    ]. Petitioner was one of the 28 defendants named in the indictment. Petitioner was charged with conspiracy in violation of 21 U.S.C. §846 in Count 1 of the indictment and with possession with intent to distribute and distributing cocaine, a Schedule II narcotic, in violation of 21 U.S.C. §842(a)(1), in Count 29 of the indictment.

(9) Petitioner entered a plea of guilty to Count 29 of the indictment on August 1, 1988.

(10) During the summer of 1988, petitioner entered [A] Rehabilitation Center and therein completed the 28 day program for drug and alcohol abuse recommended by the center.

(11) On October 18, 1988, petitioner appeared before the Honorable [B] of the United States District Court for the [    ] District of Pennsylvania for sentencing. Petitioner was sentenced to a 10 year period of incarceration to be followed by a special parole term of five years and was ordered to pay the sum of $50 to be deposited into the Crime Victims Fund maintained by the United States Treasury. Upon oral motion of the government, Count 1 of the indictment was dismissed against petitioner.

(12) Petitioner was incarcerated at the Federal Correctional Institution at [    ].

(13) On January 9, 1989, the Supreme Court of Pennsylvania entered an order directing that, as a result of petitioner's having been convicted in the United States District Court for the [    ] District of Pennsylvania of the offense of possession with intent to distribute cocaine in violation of 21 U.S.C. §841(a)(1), petitioner be immediately suspended from the bar of the Commonwealth of Pennsylvania, pursuant to Rule 214(d), Pa.R.D.E. and that the matter be referred to the Disciplinary Board pursuant to Rule 214(f), Pa.R.D.E. for the institution of formal proceedings.

(14) On March 2, 1990, petitioner appeared before the Honorable [B] of the United States District Court for the [    ] District of Pennsylvania for resentencing. Petitioner's sentence was reduced to a six year period of incarceration to be followed by a special parole term

of five years and was ordered to pay the sum of $50 to be deposited into the Crime Victims Fund maintained by the United States Treasury.

(15) While incarcerated at the Federal Correctional Institution in [ ], petitioner did extensive legal research in federal law and appellate practice by reading United States Supreme Court slip opinions, Federal Court Reporters, American Law and Jurisprudence, various law school reviews and Pennsylvania State Reports.

(16) While incarcerated at the Federal Correctional Institution in [ ], petitioner was involved in the "[C]" and was a lecturer in the program. The "[C]" is an inmate orientation program to explain the drug programs, available at the correctional facility. In addition, petitioner taught courses on alcoholism and cocaine awareness and attended Alcoholics Anonymous meetings.

(17) On February 1, 1991, petitioner's sentence was reduced to a five year period of incarceration to be followed by a special parole term of five years, he was also ordered to pay a special assessment of $50.

(18) Petitioner was released from the Federal Correction Institution in November of 1991. Petitioner was assigned to [D] Complex, a halfway house located in [ ]. Petitioner resided at [D] from November 1991 to January 10, 1992.

(19) On January 10, 1992, petitioner was assigned to probation. He has been subject to random drug and alcohol tests. All test results have been negative for substance abuse.

(20) Since his release from federal custody, petitioner has continued to be actively involved in helping others to understand the dangers of alcohol and drug use and addiction. Petitioner has spoken to students and parents in the [ ] School District and also to students at

universities within the [ ] area. Petitioner has also lectured to the Pennsylvania Department of Corrections, [ ] Office.

(21) On February 19, 1993, the Supreme Court of Pennsylvania issued an order suspending petitioner from the bar of this Commonwealth for a period of five years, retroactive to January 9, 1989. He was also directed to pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

(22) In March 1993, petitioner completed the Pennsylvania Bar Institute Continuing Legal Education Courses.

(23) Petitioner has received numerous inquiries from Pennsylvania attorneys seeking to discuss a professional relationship with petitioner if he is reinstated to the Pennsylvania Bar.

(24) In August 1983, petitioner underwent a psychological evaluation at the [ ] Psychiatric Institute and [ ] Medical Center. The report of Dr. [G], licensed clinical psychologist, indicates that petitioner presented no indication of psychiatric disturbance nor any signs of a personality disturbance. His profile revealed that he is a "normal individual."

(25) Since his release from federal custody, petitioner has been employed at [H]. Petitioner's work requires him, among other things, to review leases and advise the company regarding loan arrangements. In addition, he assisted the company in negotiating leases and contracts. Petitioner has been exposed to many business issues for which he has done legal research regarding federal funding and workers' compensation and to that end he has reviewed federal and state law.

(26) At no time has petitioner functioned as an attorney, and his employer at [H] was fully apprised of

his suspension from the bar and his conviction and incarceration.

(27) Since his release from federal custody, petitioner has kept abreast of developments in the legal field by reading trial tactics books, Pennsylvania Criminal Procedure, Pennsylvania Civil Procedure, the [   ] Bar Journal, the American Law Journal Magazine and the [   ] Public Defender's Newsletter.

(28) At the September 14, 1993 hearing on the petition for reinstatement, [I], Esq. testified on behalf of petitioner. [I] attested to petitioner's moral qualifications, integrity and his honesty to function as a lawyer should he be reinstated. Moreover, [I] has tendered an offer of employment to petitioner in the event that he is reinstated.

## III. DISCUSSION

The sole question before the Disciplinary Board is whether petitioner's request for readmission to the Pennsylvania Bar should be granted. At the expiration of a suspension, an attorney is permitted to resume the practice of law if he can demonstrate his fitness to practice. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). In order for petitioner to gain reinstatement to the practice of law, before the bar of this Commonwealth, he has the burden of demonstrating, by clear and convincing evidence, that he has both the moral qualifications and the competency and learning in the law required for admission to practice law, and that the resumption of the practice of law within the Commonwealth will neither be detrimental to the integrity of the bar, nor the administration of justice, nor subversive to the public interest. Rule 218(c)(3)(i), Pa.R.D.E. Thus, the main

focus of a reinstatement proceeding is "whether the disciplined attorney is now morally fit and technically competent to engage in the practice of law." *Philadelphia Newspapers Inc. v. Disciplinary Board,* 468 Pa. 382, 386 n.6, 363 A.2d 779, 781 n.6 (1976).

At issue is, inter alia, whether petitioner possesses the moral character necessary to resume the practice of law in this Commonwealth. In accord with Pennsylvania case law, a petitioner may prove the requisite moral qualifications through the introduction of favorable character testimony by well-respected sources. *In re Anonymous No. 99 D.B. 84,* 14 D.&C.4th 342, 354 (1991); *In re Anonymous No. 24 D.B. 84,* 14 D.&C.4th 235, 244 (1991). (citations omitted) Petitioner has presented uncontroverted evidence by way of letters attesting to his favorable character from both members of the bar and persons in the community. One such endorsement letter is from the federal agent who arrested petitioner in 1988. That petitioner is well respected among his colleagues, and that they hold him in the highest regard despite his suspension, is demonstrated by the numerous inquiries from members of the bar seeking to discuss employment, as well as job offers, if petitioner is reinstated. At the reinstatement hearing, [I], Esquire testified on behalf of petitioner and vouched for petitioner's moral qualifications, integrity and honesty. Further, [I] testified that he has tendered an offer of employment to petitioner. Petitioner has indicated that he will accept the offer in the event that he is reinstated.

The reinstatement proceeding requires an examination of the character and magnitude of petitioner's qualitative rehabilitation from the time sanctions were imposed, as

well as the degree of success achieved in the rehabilitative process. *Philadelphia Newspapers Inc., supra.* In the instant matter, petitioner has accepted full responsibility for his misconduct, is aware that his drug addiction does not operate as an excuse for his actions, and has expressed remorse and regret for his reprehensible behavior. Since the summer of 1988 when petitioner entered and successfully completed a drug rehabilitation program, he has steadfastly worked towards his recovery from substance abuse. While incarcerated, petitioner was actively involved in the "[C]" which provided meetings and lectures regarding drug and alcohol abuse to the inmates at the correctional facility. Petitioner was extensively involved both as a group member and as a lecturer to other inmates. The evidence demonstrates that he is completely rehabilitated from his substance abuse problems.

Additionally, since his release from federal custody, petitioner has been actively involved in drug awareness programs in his community. He has volunteered his time to speak to numerous public school, college and law enforcement groups regarding the dangers of substance addiction. Petitioner has been forthright and candid regarding his own struggle with his addiction and his rehabilitation and is committed to sharing his experiences in the hope that he can help others.

Other than the misconduct which led to his suspension, petitioner has an unblemished record and has not been the subject of any other disciplinary complaints. Further, at no time during his suspension has petitioner practiced law or held himself out to be an attorney.

The Disciplinary Board finds that appropriate character testimony has been presented, that petitioner has had a

drug-free lifestyle for the past six years, and that petitioner has demonstrated sincere remorse for his misconduct and a willingness to assist others in understanding the dangers of substance abuse. The evidence amply demonstrates that petitioner possesses the requisite moral qualifications to be reinstated to the practice of law in the Commonwealth of Pennsylvania.

Also at issue is petitioner's present competency and learning in the law. While in federal prison, petitioner did legal research in federal law and appellate practice by reading United States Supreme Court and Pennslyvania Appellate Court decisions, as well as law journals and law school reviews. Since his release from custody, petitioner has been employed in a position that has required him to be knowledgeable regarding several areas of the law and he has done legal research to stay abreast of emerging legal issues in these fields.

In addition, during the period of his suspension, petitioner has remained informed as to legal developments by extensive reading of texts on trial tactics, Federal Civil Procedure, Pennsylvania Criminal and Civil Procedure, as well as legal journals and legal newsletters. Furthermore, petitioner has maintained his currency in the law by completing eight Pennsylvania Bar Institute-Continuing Legal Education courses as required by Disciplinary Board Rule §89.279. In light of these facts, the board finds that the petitioner has proven by clear and convincing evidence that he has the competency and learning in the law required for reinstatement to the practice of law.

Petitioner's past misconduct that led to his suspension was detrimental to the integrity of the legal system. However, the record demonstrates that petitioner's impropriety

was the result of his serious drug dependency and that petitioner has worked diligently and successfully to rid himself of his addictive behavior. Moreover, petitioner has demonstrated sincere regret and remorse for his misbehavior and has worked diligently in the community to share his experiences in the hope that he can enlighten others regarding the dangers of substance abuse.

The board finds that petitioner's diligent, dedicated and qualitative rehabilitation has restored the public trust and, therefore, petitioner's resumption to the practice of law would not be detrimental to the integrity and standing of the bar or the administration of justice, nor will it be subversive of the public interest. See *In re Anonymous No. 24 D.B. 84, supra* at 244; *In re Anonymous No. 26 D.B. 81,* 7 D.&C.4th 260, 273 (1990).

Finally, the issue of whether a petitioner should be reinstated while on probation was raised during the reinstatement hearing and subsequently addressed by letters to the Hearing Committee from both petitioner and the Office of Disciplinary Counsel. The board has rejected the suggestion that the board's sanction should always be equal to the period of incarceration or probation. In *In re Anonymous No. 62 D.B. 85,* 49 D.&C.3d 504, 509 (1987), the board addressed this issue and concluded that "each case should be evaluated on the basis of the nature of the offense committed, and the particular offenses' relationship to a respondent's fitness to practice law and/or involvement in conduct which involves moral turpitude, in violation of ... [the disciplinary rules]."

Inasmuch as the sentencing systems within the Commonwealth and throughout the country vary widely and may result in extensive periods of probation and parole

that have little, if any, relevance to whether an individual is morally or otherwise fit to practice law, the board declines to adopt the position that a petitioner on probation is foreclosed from reinstatement. Rather, the board looks to the specific facts of petitioner's present conduct and situation to determine whether the petitioner is currently qualified to practice before the bar of the Commonwealth. See *In re Anonymous Nos. 61 D.B. 85 & 62 D.B. 81,* 12 D.&C.4th 211, 222 (1989) (in determining whether reinstatement is warranted the board must consider "petitioner's *present* qualifications and competence in legal skills..."). (emphasis in the original) (citations omitted)

Having fully considered petitioner's misconduct, his subsequent exemplary qualitative rehabilitation and current commendable behavior and standing in the community, the board concurs with the Hearing Committee that petitioner has demonstrated that he has met the requirements for reinstatement to the bar of the Commonwealth of Pennsylvania.

## IV. CONCLUSIONS OF LAW

The Disciplinary Board of the Supreme Court of Pennsylvania finds and concludes that petitioner has demonstrated by clear and convincing evidence that he has both the moral qualifications and the competency and learning in the law required for admission to practice in this Commonwealth. In addition, the board further concludes that petitioner has demonstrated that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest.

## V. RECOMMENDATION

Based upon the foregoing discussion, the Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that your honorable court grant the instant petition for reinstatement of [petitioner] to the practice of law in the Commonwealth of Pennsylvania.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of said petition for reinstatement.

Ms. Lieber recused herself.

Mr. Paris dissented.

Mr. Sloane did not participate in the adjudication.

## ORDER

And now, August 24, 1994, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated July 18, 1994, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Zappala and Senior Justice Montemuro did not participate in this matter.